IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EL PASO APARTMENT ASSOCIATION, | § | |
| et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | EP-08-CA-145-DB |
| | § | |
| THE CITY OF EL PASO, and | § | |
| EDMUND G. ARCHULETA, In his official | § | |
| capacity as President and Chief Executive | § | |
| Officer of the El Paso Water Utilities Public | § | |
| Service Board, | § | |
|     Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiffs El Paso Apartment Association ("EPAA"), et al.'s "Application For Temporary Restraining Order And For Preliminary Injunction" ("Application for TRO" and "Motion for Preliminary Injunction," respectively), filed in the above-captioned cause on April 29, 2008. On May 9, 2008, Defendants the City of El Paso, the El Paso Water Utility - Public Service Board ("PSB"), and Edmund Archuleta filed their "Response to Plaintiffs' Application For Preliminary Injunction" ("Response"). On May 1, 2008, the Court entered an Order denying the EPAA's Application for TRO and set the matter for a hearing on the Motion for Preliminary Injunction. After notice to all Parties, the Court held a hearing where all Parties were present and represented by counsel. After due consideration, the Court is of the opinion that Plaintiffs' Motion should be denied for the reasons that follow.

### BACKGROUND

In August 2006, El Paso, Texas, and the surrounding area experienced unusually heavy rainfall. The torrential rains exceeded the capacity of the area's storm-water drainage

system.  As a result, severe flooding occurred and El Paso sustained substantial damage.

Accordingly, the City of El Paso enacted Ordinance 16668, creating the El Paso Drainage Utility

to relieve future flooding, and placed the utility under the PSB's administration.  In turn, the PSB

levied a storm-water fee upon all water consumers in El Paso, calculated upon the square footage

of impervious land.[1]  Specifically, the PSB created two categories of consumers: residential and

non-residential.  Residential consumers fall into one of three categories, based upon their

property's square footage, and pay a flat fee.  Non-residential consumers pay an amount based

upon a formula.  The formula is calculated by multiplying the exact square footage of impervious

land, in a given lot, by a fixed amount.  The PSB categorized Plaintiffs, as apartment owners,

into the non-residential category.

On April 28, 2008, Plaintiffs filed the instant cause of action alleging Defendants

violated the Fair Housing Act ("FHA" or "the Act"), the Fourteenth Amendment to the United

States Constitution, and Article VIII, § 1 of the Texas Constitution.  Plaintiffs seek injunctive and

declaratory relief; restitution; and attorneys fees.  Plaintiffs filed an Application for a Temporary

Restraining Order, which the Court denied.  The instant Motion followed.

## DISCUSSION

For a preliminary injunction to issue, a plaintiff must satisfy the four-part

*Callaway* test, showing: 1) a substantial likelihood of success on the merits; 2) a substantial

threat that irreparable harm will ensue if the relief requested is not granted; 3) the threatened

injury outweighs the threatened harm to defendant; and 4) granting the injunction will not

---

[1] Impervious land contributes to storm-water run-off as the ground cannot soak up the rains.

disserve the public interest. *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618,

621 (5th Cir. 1985) (citing *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th

Cir. 1974)). A preliminary injunction is an extraordinary and drastic remedy, which will not

issue unless a plaintiff has clearly established the burden of persuasion as to all four factors.

*Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989). The district

court has the discretion to grant or deny the injunction. *Miss. Power & Light*, 760 F.2d at 621.

However, the decision to grant an injunction "is the exception rather than the rule." *Texas v.*

*Seatrain Intern., S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Denial is appropriate where the movant

fails to establish any one element of the *Callaway* test. *Black Fire Fighters Ass'n of Dallas v.*

*City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (per curiam). The Court discusses each prong in

turn. *See* FED. R. CIV. P. 52 (requiring a district court to "set forth the findings of fact and

conclusions of law which constitute the grounds of its action").

  *1. Likelihood of Success*

    The Court first determines the likelihood that Plaintiffs will prevail on their

substantive claims. To satisfy their burden, Plaintiffs need not show "to a moral certainty" that

Plaintiffs' position is the "only correct position." *Seatrain*, 518 F.2d at 180. As such, an

injunction will issue unless "there is no chance that the [Plaintiffs] will eventually prevail on the

merits." *Id.* The Court discusses Plaintiffs' likelihood of success on the merits as to their FHA,

equal protection, and Texas constitution arguments.

a. Fair Housing Act

Plaintiffs argue that the PSB's classification of apartment owners as

"commercial"[2] is unlawfully discriminatory as it has a disparate impact upon apartment tenants,

in violation of the FHA.[3]  Specifically, Plaintiffs contend that a disproportionate number of

apartment tenants are comprised of a protected class - ethnic and racial minority groups.

Plaintiffs also aver that the manner in which the PSB calculates impervious land for commercial

consumers rather than residential consumers has a discriminatory disparate impact.  In their

Response, Defendants contend that Plaintiffs have not met their prima facie case, and, further,

that the classification serves a legitimate state interest.  The Court finds Plaintiffs' argument

unconvincing.

The FHA prohibits unlawful discrimination of persons receiving services in

connection with the rental of a dwelling.  *See* 42 U.S.C.A. § 3604(b) (West 2003).  The United

States Court of Appeals for the Fifth Circuit ("Fifth Circuit") recognizes that a disparate impact

cause of action exists under the FHA, *see Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555

(5th Cir. 1996), and that municipal governments are subject to suit under the Act.  *See, e.g.,*

---

[2] The actual classification is "non-residential;" however, the terms are interchangeable.

[3] Plaintiffs' argument appears to imply an issue of third-party standing.  The standing doctrine carries the general prohibition on a litigant's raising another person's legal rights.  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The instant cause of action was initiated by apartment owners and an apartment association.  The evidence shows that these owners, not the tenants, incurred the storm-water fee.  Nevertheless, the apartment owners assert a claim on behalf of their tenants without addressing the third-party standing requirements.  *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 114-115 (1976) (enumerating two factual elements to determine third-party standing).

*Elderhaven, Inc., v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996).  The plaintiff bears the

burden of proving a violation of the Act by a preponderance of the evidence.  *Id.*

Disparate impact claims do not require evidence of intentional discrimination.

*Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  Rather, these claims question neutral policies

that create statistical disparities equivalent to intentional discrimination.  *See id.*  To prevail in a

discriminatory impact claim, the protected class, as a discrete minority, must show that a policy

has a discriminatory impact on the members of the class.  *See Betsey v. Turtle Creek Assoc.*, 736

F.2d 983, 987 (4th Cir. 1984).  A court examines the impact upon the protected class in relation

to the entire group affected by the policy, focusing on the degree of the statistical disparity.  *See*

*id.* at 988; *Summerchase Ltd. P'shp I v. City of Gonzalez*, 970 F. Supp. 522, 528 (M.D.La. 1997)

("Court should focus on the disproportionate effect on the *entire* population in the region.")

(emphasis in original).  Nevertheless, reliance upon "bare statistical comparison" is insufficient

to establish a prima facie case of disparate impact.  *See, e.g., Black Fire Fighters Ass'n of Dallas*,

905 F.2d at 66.  *See also Munoz*, 200 F.3d at 301 (stating that statistics show only correlation and

not causation).

Once a plaintiff establishes its prima facie case, the burden shifts to the defendant

to prove a business necessity sufficiently compelling to justify the policy.  *Betsey*, 736 F.2d at

988.  Specifically, a defendant must show: (1) its actions furthered a legitimate bona fide

governmental interest; and (2) an alternative course of action, yielding a lesser discriminatory

impact, was not available.  *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 532 (N.D.Tex.

2000) (citing *Huntington Branch NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir.

1988)); *Summercahse*, 970 F. Supp. at 528 (quoting *Huntington*, 844 F.2d at 939).

5

Here, the data shows that the general population of Texas has a lower rate of homeownership than the national average.[4]  Further, the evidence shows that in Texas, racial and ethnic minorities have lower rates of homeownership than Whites.  Also, the data shows that Hispanics living in Texas have greater rates of homeownership when compared to their national counterparts.  Specifically, in El Paso, more Hispanics own homes than rent apartments.  Notably, the record is devoid of statistical comparisons between El Paso homeowners and renters.[5]

Based on a statistical analysis of homeownership in Texas as compared to the United States, Plaintiffs urge the Court to draw the inference that racial and ethnic minorities are over-represented by the percentage of El Pasoan's living in apartments when compared to El Paso's general population.  Plaintiffs' logic is flawed.  The evidence shows that the El Paso, Texas population is eighty-one percent (81%) Hispanic.  Obviously, El Paso's general population does not mirror that of Texas, and even less so, that of the United States.  It is axiomatic that as the general populations are dissimilar, so too will be the apartment tenant populations.  In other words, Plaintiffs rely on an inference to be drawn from statistics that fail to reflect the population at issue and its ethnic make up.  Without more, Plaintiffs cannot satisfy their burden of proving a prima facie case as to the degree of the statistical disparity for El Paso.  Thus, the Court finds that

---

[4] The evidence also shows that Texas ranks forty-one (41) out of fifty (50) states in homeownership despite the fact that Texas ranks sixteenth in the nation in terms of affordable housing.  Only nine states in the nation have lesser rates of homeownership.

[5] The evidence include the list of tenants for one apartment complex, approximately 112 rental units.  Assuming this document shows a statistical disparity, it is only for 112 rental units out of the 6,000 rental units operated by Plaintiffs.  Plaintiffs carry the burden of proving disparate impact as to all minorities affected by the policy, not solely one apartment complex among approximately 11,500 complexes in the city.

Plaintiffs have failed to establish a likelihood of success on the merits of its disparate impact

claim.

       b. Equal Protection Claim

       Second, Plaintiffs argue that the commercial classification is not rationally related

to any legitimate purpose and violates Plaintiffs' right to equal protection under the Fourteenth

Amendment to the United States Constitution.[6] Defendants counter that a rational basis exists

for the classification and that the classification passes constitutional scrutiny. The Court agrees

with Defendants.

       Under rational basis review, the United States Supreme Court ("Supreme Court")

places the burden of proof upon the party challenging the state action. *Bd. of Trustees of Univ. of*

*Ala. v. Garrett*, 531 U.S. 356, 366-67 (2001). The challenging party must "negate 'any

reasonably conceivable state of facts that could prove a rational basis for the classification.'" *Id.*

at 367 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The challenged state action does not

violate the Fourteenth Amendment if it rationally relates to a legitimate governmental purpose.

*Id.*

       In the instant case, Defendants created the storm-water utility in response to

widespread damage caused by the 2006 storm. Defendants opted to charge a fee based upon the

---

[6] In their second argument, Plaintiffs do not contest that they are members of a protected class, nor do Plaintiffs assert the rights of their tenants as to this claim. Rather, Plaintiffs assert that they are being treated differently than other similarly situated land owners, and that the appropriate standard is the rational basis test.

    In the interest of completeness, the Court notes that if Plaintiffs claimed they constitute a protected class, they carry the burden to demonstrate intentional racial discrimination or purpose on the part of Defendants. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). As Plaintiffs do not allege any act of racial animus on the part of any Defendant, that claim would fail.

impervious land of each landowner's lot.[7]  Based on the number and various types of lots in El

Paso, Defendants created two classes of consumers for administrative convenience.[8]  Further, the

PSB categorized apartments as commercial based on the for-profit nature of that business.

Plaintiffs proffer no evidence to suggest that these reasons are illegitimate or irrational.  As a

result, the Court finds the storm-water utility fee is rationally related to a legitimate state interest.

Thus, the Court finds that Plaintiffs have failed to satisfy their burden in negating any

conceivable state of facts which would prove that Defendants' classification is rationally based.

Therefore, the Court is of the opinion that Plaintiffs have not established a likelihood of success

on the merits of their equal protection claim.

> c. Texas Constitution

Lastly, Plaintiffs argue that the storm-water fee is an impermissible "occupation

tax" under the Texas Constitution.  Specifically, Plaintiffs allege that the storm-water drainage

fee is not intended to finance the cost of a storm-water utility, but is a means of raising general

revenue for the City.  In their Response, Defendants argue that the rate was based on traditional

rate making principles to cover the estimated costs to the City for creating the utility and

providing the utility services.  The Court finds Plaintiffs' argument unconvincing.

Whether "the primary purpose of the fee is the raising of revenue" guides the

classification of a fee as an occupational tax.  *See Lowenberg v. City of Dallas*, 2008 WL

821040, *3 (Tex. March 28, 2008) (quoting *Hurt v. Cooper*, 110 S.W.2d 896, 899 (Tex. 1937)).

---

[7] The rate was calculated in a cooperative effort with a private consulting firm after undertaking a feasibility study.

[8] While over 150,000 single-family lots exist, apartment complex number approximately 11,500 in the El Paso, Texas area.

"On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes." *Hurt*, 110 S.W.2d at 899.  However, the classification of the tax is not dependent upon the designation of revenue as special or general revenue funds. *See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997).  The decisive issue is whether the fee was enacted to raise funds in excess of the amount reasonably needed for the regulation of the utility. *Id.*

Plaintiffs' argument relies upon the decision in *Lowenberg v. City of Dallas*. *See* 2008 WL 821040.  In *Lowenberg*, the City of Dallas promulgated a fee upon commercial builders to finance fire-prevention services throughout the entire city. *Id.* at *1.  Texas Supreme Court held that the fire prevention fee was an impermissible occupation tax because the Dallas fee generated revenue that greatly exceeded its regulatory cost and, because the city had completely shifted the tax burden from the taxpayers onto commercial builders. *Id.* at *3.  The El Paso storm-water fee is factually distinguishable from the *Lowenberg* fire-prevention fee.

Here, the storm-water fee is imposed upon the entire population of El Paso, from private homeowners to commercial business.  Although there is a disparity between the amount charged, all are taxed their share based on the size of their lot.  Second, a review of the record fails to reveal evidence suggesting that the monies generated from the fee will significantly exceed the cost to build the storm-water drainage utility.  While the Court may speculate that the amount necessary to create this new utility will be great, a specific estimate is absent from the record.  As a result, there is no evidence for comparison.  As such, revenue will be raised; however, evidence suggesting that a disparity will exist between the revenue raised and the actual cost of the utility is lacking.  Thus, Plaintiffs have not established their burden in showing that

the revenue generated from the storm-water fee greatly exceeds the amount needed to regulate

the storm-water utility. Therefore, the Court finds that Plaintiffs have failed to establish a

likelihood of success on the merits of their state law claim.

As the Court finds that Plaintiffs cannot show a likelihood of success on the

merits of any of their three claims, the inquiry ends and an injunction cannot issue. Nonetheless,

to be thorough, the Court discusses the remaining three *Callaway* elements.

### 2. Irreparable Injury

Next, *Callaway* requires a plaintiff to show a substantial threat that irreparable

harm will ensue if the relief requested is not granted. *Miss. Power & Light*, 760 F.2d at 621.

Plaintiffs contend that a showing of irreparable injury is presumed under an alleged violation of

the FHA, thereby eliminating their burden as to this element. Alternatively, Plaintiffs would

show that they will incur a financial loss and potential loss of water service, constituting

imminent and irreparable harm. In response, Defendants aver that the presumption of irreparable

injury is inapplicable to the FHA. Likewise, Defendants state that the PSB will not terminate

water service, and that if Plaintiffs prevail, the Defendants will refund any payments if necessary.

The Court disagrees with Plaintiffs.

In *EEOC v. Cosmair*, the Fifth Circuit recognized a mandatory presumption of

irreparable injury in employment discrimination cases. 821 F.2d 1085, 1090-91 (5th Cir. 1987)

(extending the presumption to claims of retaliation). Specifically, the *Cosmair* court held that

"when a civil rights statute is violated, 'irreparable injury should be presumed from the very fact

that the statute has been violated.'" *Id.* at 1090 (quoting *United States v. Hayes*, 415 F.2d 1038,

1045 (5th Cir. 1969)). That presumption has not been applied to violations of the FHA. *See,*

*e.g., Black Fire Fighters Ass'n of Dallas*, 905 F.2d at 67 (Jones, J, concurring).  A plain reading

of the statute demonstrates that a finding of irreparable injury is permissive, not mandatory:  "[I]f

the court finds that a discriminatory housing practice has occurred or is about to occur, the court

may award to the plaintiff . . . as the court deems appropriate, any permanent or temporary

injunction . . . ."  42 U.S.C.A. 3613(c)(1) (West 2003).  In other words, the statute places

discretionary authority with the courts.[9]  As the statute does not expressly authorize a

presumption of irreparable injury, the Court finds that no presumption exists in the instant case.

Without the benefit of a presumption of irreparable injury, it is well-established

that "an injury is irreparable only if it cannot be undone through monetary remedies."  *Enter. Int'l*

*Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985).

Nonetheless, in *Mississippi Power & Light*, the Fifth Circuit held that a promise to refund money

in a utility fee dispute is considered to be an inadequate remedy.  760 F.2d at 624 (citing *Federal*

*Power Comm'n v. Tenn. Gas Transmission Co.*, 371 U.S. 145 (1962)).  In that case, an energy

provider breached a contract by increasing the price of natural gas to a utility provider, and the

utility provider sought injunctive relief.  *Id.* at 619.  The utility provider, itself, however, was not

in danger of a pecuniary loss as it simply planned to increase the price charged to its consumers,

the general public.  *Id.* at 623.  One issue affecting the claim for injunctive relief required the

Fifth Circuit to address whether the promise of the energy provider to refund any excess amount

was an adequate remedy.  *Id.* at 624.  The Fifth Circuit relied upon the Supreme Court's decision

---

[9] The statue at issue is not controlling on the element of irreparable harm.  As a result, the Court adheres to *stare decisis* and utilizes the *Callaway* standard to determine whether Plaintiffs have met their burden in showing irreparable harm.  *See Miss. Power & Light*, 760 F.2d at 625.

in *Federal Power Commission v. Tennessee Gas Transmission Co.*, 371 U.S. 145, to find that the

public interest must be taken into account to determine whether the injunction would issue. *Id.* at

624. The Fifth Circuit held that the refund was an inadequate remedy, because the transaction

involved two exchanges, requiring a check to issue to the utility company, and another check to

issue to thousands of consumers. *Id.* What is more, the Fifth Circuit cited numerousity of

consumers, an illusory "trickling down" affect, and the "transient" nature of society as

problematic, negating the ability to refund any costs to the consumers. *Id.*

       In the instant case, a number of Plaintiffs have paid the storm-water fee, while at

least one Plaintiff has refused. The termination of water service is the only potential danger

facing those Plaintiffs who have not paid the fee. Apparently, that concern is unfounded as

Defendants concede that they will not shut off any consumer's water service. Further, many of

the concerns at issue in *Mississippi Power & Light* are not present in the instant case. First, The

consumers are limited in number, negating any numerosity concern. *Id.* (expressing concern over

20,000 unclaimed refund checks mailed to the public). To be clear, the consumers are not the

apartment tenants because the storm-water fees are charged directly to the apartment complex,

with a total of forty-two (42) apartment owners and their association complaining of the storm-

water fee.[10] Second, the concern regarding the "transient nature of society" is ill-founded, as

these Plaintiffs are sophisticated business owners operating various commercial enterprises

throughout the city. There is no evidence in the record to indicate that these business owners will

relocate, thereby creating problems returning any potential refund. Rather, the evidence shows

---

[10] Even assuming a greater impact upon all of the apartment owners in El Paso, Texas,
not just the forty-two (42) owners here, that number would not be so significant as to warrant the
same concern in *Mississippi Power & Light*.

12

that Plaintiffs' businesses are deeply rooted in the El Paso, Texas economy, and that Plaintiffs are business leaders. Finally, the "illusory trickling down" concern with the El Paso storm-water fee is not equivalent to the concern before the Fifth Circuit.[11] Thus, the Court finds that any potential injury in this case concerns a pecuniary loss and does not constitute irreparable harm. Therefore, the Court finds that Plaintiffs have not shown that they will be irreparably injured.

### 3. Balance of Harm

Third, Plaintiffs must show that the threatened injury outweighs the threatened harm to defendant. *Id.* at 621. Plaintiffs allege, in conclusory terms, that any potential harm to Defendants is minimal. Defendants counter that the issuance of a temporary injunction will force the delay of constructing the storm-water utility and will cause a reduction in the delivery of utility services. The Court finds Plaintiffs' argument unconvincing.

While Plaintiffs are in no danger of suffering irreparable harm, Defendants and the public at large will incur significant losses should the injunction issue. Specifically, Defendants will be forced to delay implementation of the storm-water utility. While there is no way of fathoming when the El Paso area will be impacted by another devastating storm such as the one in 2006, the area will continue to be susceptible to such damage. Thus, the Court finds that the potential harm to Defendants outweighs any potential harm to the Plaintiffs. Therefore, the Court is of the opinion that Plaintiffs have failed to establish its burden of proving that injury to themselves outweighs the potential injury to the Defendants.

---

[11] Assuming the instant case gives may give rise to an "illusory trickling down process," it is only one of three factors that led to the *Mississippi Power & Light* decision. As such, the Court finds that any possible refund would be an adequate remedy in the instant case.

*4. The Public Interest*

Last, Plaintiffs must demonstrate that issuance of the injunction will not disserve

the public interest. *Id.* While Plaintiffs recognize this fourth element, their Application is silent

on the issue. Nonetheless, the evidence reveals that the existing storm-water infrastructure is in

need of repairs and upgrades. As such, the storm-water utility cannot sustain another storm of

2006, constituting a disservice and a significant risk to the public. Thus, the Court finds that

Plaintiffs have not carried their burden in proving that issuance of an injunction will not disserve

the public interest, and that the injunction should be denied.

## CONCLUSION

After due consideration, the Court is of the opinion that Plaintiffs' Application

should be denied as Plaintiffs have not carried their burden of proof in meeting the *Callaway* test.

Plaintiffs have failed to show a likelihood of success on the merits on any of their three claims.

First, Plaintiffs did not establish their prima facie case in showing that the storm-water fee has a

disparate impact upon the ethnic and racial minorities of El Paso. Second, Plaintiffs did not

negate Defendants' reasons for implementing the storm-water fee, which serve a legitimate

governmental interest. Third, Plaintiffs proffered no evidence showing that the revenue raised by

the storm-water fee would greatly exceed the reasonably necessary costs associated with the

utility. Additionally, Plaintiffs did not make a sufficient showing that they would suffer

imminent and irreparable harm. The presumption of irreparable harm is not recognized in the

Fifth Circuit, and Plaintiffs are at no risk of losing water service. Further, Plaintiffs' potential

loss is nothing more than a pecuniary interest, which does not constitute irreparable harm.

Lastly, the instant case is factually distinguishable from *Mississippi Power & Light*, indicating

that any possible refund is an adequate remedy.  Moreover, the record demonstrates that the

potential harm to Defendants resulting from an injunction outweighs the potential harm to

Plaintiffs.  Finally, the evidence reveals that the public would not be served by an injunction in

that the storm-water utility will not be repaired, leaving the El Paso, Texas area susceptible to

damage caused by another torrential downpour.  Therefore, the Court is of the opinion that

Plaintiffs have not carried their burden as to any of the *Callaway* elements, and that the

injunction should not issue.

   Accordingly, **IT IS HEREBY ORDERED** that Plaintiff El Paso Apartment

Association, et al.'s "Motion for Preliminary Injunction" is **DENIED**.

   **SIGNED** this **24th** day of **June, 2008**.

            THE HONORABLE DAVID BRIONES
            UNITED STATES DISTRICT JUDGE